# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| United States of America, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | **ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS** |
| vs. | ) ) | Case No. 1:19-cr-031 |
| Byron Brown, | ) ) | |
| Defendant. | ) | |

Before the Court is a motion to suppress evidence filed by Defendant Byron Brown on March 26, 2019. See Doc. No. 62. On April 9, 2019, the Government filed a response in opposition to the motion. See Doc. No. 71. Brown did not file a reply. For the reasons set forth below, the Court denies Brown's motion to suppress.

## I. BACKGROUND

On March 6, 2019, a federal grand jury indicted the Defendant, Byron Brown, on one count of conspiracy to possess with intent to distribute and distribute controlled substances; two counts of possession with intent to distribute a controlled substance; one count of possession of a firearm in furtherance of a drug trafficking crime; and one count of possession of firearms by a convicted felon. See Doc. No. 2. On March 26, 2019, Brown filed a motion to suppress evidence obtained as a result of a search warrant. See Doc. No. 62. On June 5, 2019, a superseding indictment adding a co-conspirator was filed. See Doc. No. 86.

On February 12, 2019, Bismarck Police Department Detective Jerry Stein received a call from a source who wished to remain anonymous. Prior to the call, Detective Jerry Stein was working on a long-term investigation of heroin and methamphetamine trafficking into the

1

Bismarck area. The anonymous individual provided information that a black male was coming to Bismarck from Minneapolis on the bus at 2:00 a.m. and that he was staying at the Quality Inn. This information led law enforcement to check the Quality Inn's guest registration, which lists the name and rooms of everyone staying at the hotel. Georgianna Hepperle's name was registered to room 305. Law enforcement recognize Ms. Hepperle's name and were aware she had been involved in drug-related activity in the past.

Ms. Hepperle was under the supervision of North Dakota Parole and Probation and was subject to a search clause. Law enforcement decided to conduct a probationary search of Ms. Hepperle's hotel room. Law enforcement, along with a probation officer, knocked on the door and announced their presence. A black male, later identified as Byron Brown, answered the door and "quickly engaged in tumultuous behavior with the police." See Doc. No. 62, p. 2. Officers noticed a strong odor of marijuana. Id. They observed an unzipped backpack sitting on a chair containing a substance appearing to be methamphetamine in excess of a quarter pound and a smaller plastic baggy that appeared to contain approximately one ounce of heroin. See id.; see also Doc. No. 71-1, p. 7.

Once officers realized nobody else was in the hotel room, including Ms. Hepperle, they stopped the probation search, froze the scene, and sought a search warrant. Detective Jerry Stein with the Bismarck Police Department provided testimony to South Central Judicial District Court Judge Dan Borgen. See Doc. No. 71-1. In support of his request for a search warrant, Detective Jerry Stein testified that, upon entering the hotel room, Stein smelled the odor of marijuana and observed what appeared to be large quantities of both methamphetamine and heroin in plain view. See Doc. No. 71-1, p.7. Judge Borgen granted the search warrant after making a finding of probable cause based upon "an anonymous tip that led the officers to a probation search, odor of

marijuana, large quantities of drugs in plain view that are indicative of dealing along with the fact that the tip was originally that someone would be coming in to deal." See Doc. No. 71-1, pp.10-11. Law enforcement returned to the Quality Inn to execute the search warrant. During the search of the black backpack, officers located a 9mm handgun, three bags of methamphetamine, a zip lock bag of heroin, a digital scale, a large amount of U.S. Currency, an opened box of zip lock bags, and a cellphone. See Doc. No. 62, p. 6.

**II.    LEGAL DISCUSSION**

Brown argues the evidence seized pursuant to the search warrant should be suppressed because the search warrant was not issued by a neutral and detached magistrate and it was not based on reliable information. The Government disagrees and alternatively argues that if the search warrant was somehow defective, the good-faith exception to the exclusionary rule should apply. The Fourth Amendment to the Constitution of the United States provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV; see also Johnson v. United States, 333 U.S. 10, 13 (1948). However, the Fourth Amendment says nothing about suppressing evidence obtained in violation of its command. "The judicially-created exclusionary rule precludes admission of unlawfully seized evidence in criminal trials." Thompson v. Carthage Sch. Dist., 87 F.3d 979, 981 (8th Cir. 1996). The exclusionary rule "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect [against police misconduct], rather than a personal constitutional right of the party aggrieved." United States v. Calandra, 414 U.S. 338, 348 (1974).

The general rule is that the government must secure a warrant before conducting a search. United States v. Alberts, 721 F.2d 636, 638 (8th Cir. 1983). "The Fourth Amendment requires a showing of probable cause to support a search warrant." United States v. Gabrio, 295 F.3d 880, 882 (8th Cir. 2002). "Probable cause exists if the warrant application and affidavits describe circumstances showing a fair probability that contraband or evidence of a crime will be found in a particular place . . . ." United States v. Keele, 589 F.3d 940, 943 (8th Cir. 2009) (quoting United States v. Montes-Medina, 570 F.3d 1052, 1059 (8th Cir. 2009)). After a judicial officer has issued a search warrant upon a finding of probable cause, "that finding deserves great deference." Walden v. Carmack, 156 F.3d 861, 870 (8th Cir. 1998).

### A. WHETHER JUDGE BORGEN WAS A NEUTRAL AND DETACHED MAGISTRATE

Brown contends that Judge Borgen was not a neutral and detached magistrate when he granted the search warrant. Under the Fourth Amendment, a search warrant must be issued by a neutral and detached magistrate instead of being judged by the officers engaged in the competitive enterprise of ferreting out crime. Johnson, 333 U.S. at 14. A neutral and detached magistrate is someone independent of the police and prosecution. Shadwick v. City of Tampa, 407 U.S. 345, 350 (1972). A magistrate failing to "manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application" and who acts instead as "an adjunct law enforcement officer" cannot provide valid authorization for an otherwise unconstitutional search. Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 326-27 (1979).

Brown asserts that South Central Judicial District Judge Daniel Borgen was not a neutral and detached magistrate because he represented Georgianna Hepperle eight months prior to the issuance of the warrant. The Court is unconvinced. The mere fact Georgianna Hepperle was

4

simply mentioned in the testimony does not show Judge Borgen abandoned his role as a neutral and detached judicial officer. Brown's argument only speculates Judge Borgen may have been influenced by his prior representation of Ms. Hepperle. Simply stated, the naked assertion that Judge Borgen failed to disqualify himself is not enough. It is reasonable to believe, based upon the testimony provided to Judge Borgen, including the officer's observations of drugs and drug paraphernalia, that he remained neutral and detached in his finding of probable cause to support the search warrant.

Even if Judge Borgen were somehow improperly influenced, the Court finds the officers acted in good faith and reasonably relied on the search warrant. The United States Supreme Court outlined a "good faith exception" to the exclusionary rule in United States v. Leon, 468 U.S. 897 (1984). For exclusion of evidence at trial to be appropriate, the deterrence benefits of suppression must outweigh the rule's heavy costs; the result of this cost benefit analysis turns on the "flagrancy of the police misconduct" at issue. Leon, 468 U.S. at 911. Evidence should be suppressed, "only if it can be said that the law enforcement officer[s] had knowledge, or may be properly charged with knowledge, that the search was unconstitutional under the Fourth Amendment." Illinois v. Krull, 480 U.S. 340, 348-49 (1987). When the police exhibit "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights, the benefits of exclusion tend to outweigh the costs. Herring v. United States, 555 U.S. 135, 144 (2009). "But when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrent value of suppression is diminished, and exclusion cannot 'pay its way.'" Davis v. United States, 564 U.S. 229, 238 (2011) (internal citations omitted).

There is no assertion of officer misconduct in this case. It is unlikely Detective Stein knew or would have known about Judge Borgen's prior representation of Ms. Hepperle. Even if he did,

5

it is questionable whether that knowledge would lead him to the conclusion that the warrant was somehow invalid given the drugs he smelled and observed in the hotel room. The Court finds the actions of the law enforcement officers were at all times conducted in good-faith reliance on the search warrant. See United States v. Carter, 413 F.3d 712, 715 (8th Cir. 2005) (refusing to suppress evidence where officers relied in objective good faith on a search warrant). Even if there were some misconduct on the part of Judge Borgen, suppression of the evidence would not be warranted.

### B. WHETHER THE SEARCH WARRANT WAS BASED UPON RELIABLE INFORMATION

Brown also contends the search warrant was not based upon reliable information because law enforcement did not independently corroborate information provided by the confidential informant. "Probable cause to issue a search warrant exists when an affidavit [or testimony] in support of the warrant sets forth sufficient facts to establish that there is a 'fair probability that contraband or evidence of' criminal activity will be found in the particular place to be searched." Davis, 471 F.3d at 946 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). A determination of probable cause is made after considering the totality of the circumstances. United States v. Gettel, 474 F.3d 1081, 1086 (8th Cir. 2007).

Along with information provided by the tipster, which simply led officers to investigate the hotel, Judge Borgen based his finding of probable cause on the "odor of marijuana" the detective smelled in the hotel room, as well as "large quantities of drugs in plain view that are indicative of dealing." See Doc. No. 70-1, pp. 10-11. Even without the tip, the officers' observation of drugs and the odor of marijuana would support Judge Borgen's finding of probable cause. See Johnson, 333 U.S. at 13 ("If the presence of a controlled substance odor is testified to before a magistrate and he finds the affiant qualified to know the odor and it is one sufficiently

distinctive to identify a forbidden substance, the Supreme Court has never held such a basis insufficient to justify issuance of a search warrant."). Brown's argument is without merit.

## III.     CONCLUSION

The Court has carefully reviewed the entire record, the parties' arguments, and the relevant case law. For the reasons outlined above, the Defendant's motion to suppress (Doc. No. 62) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 22nd day of July, 2019.

> */s/ Daniel L. Hovland*
> Daniel L. Hovland, Chief Judge
> United States District Court